## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MANUEL BLANCO and LIXIS
QUINTOSA,

      Plaintiffs,

v.                               Case No. 8:17-cv-02626-T-02SPF

BANK OF AMERICA, N.A.,

      Defendant.

_____/

## ORDER

This matter is before the Court on Defendant's Motion for Summary

Judgment. Dkt. 145. Plaintiffs filed a Memorandum in Opposition to Defendant's

Motion for Summary Judgment. Dkt. 152. Defendant filed a reply. Dkt. 153. The

Court held a hearing on this matter on March 12, 2020. At the Court's request, the

Parties filed supplemental briefing on the issues relating to Lixis Quintosa's

bankruptcy. Dkts. 162 & 165. With the benefit of full briefing and able argument

by both sides, the Court grants in part and denies in part Defendant's Motion for

Summary Judgment, Dkt. 145, pursuant to Fed. R. Civ. P. 56.

## BACKGROUND

Manuela Blanco and Lixis Quintosa ("Plaintiffs") allege that Bank of

America ("BOA") committed common law fraud against them while Plaintiffs

were applying for the Home Affordable Modification Program ("HAMP") after the 2008 financial crisis. Dkt. 17 at 19–21. Plaintiffs allege that BOA made false statements to induce Plaintiffs to default on their mortgage, to incur the expense of resending their application materials, and to make trial payments under the HAMP program which were either retained for profit or applied to fraudulent inspection fees.

On July 30, 2007, Plaintiffs executed a mortgage and note for their home located at 6714 W. Chelsea Street, Tampa, Florida. Dkt. 17 at 10. The lender was BOA. Plaintiffs experienced financial hardship due to the recession in 2009 and contacted BOA by phone requesting a HAMP modification. *Id.* In her deposition, Ms. Quintosa alleges that she first spoke to a BOA representative in 2009 who told her they had to be behind on their payments to qualify for HAMP. Dkt. 147-3 at 28.

In 2010, Plaintiffs provided BOA their HAMP application and supporting financial documents. Dkt. 17 at 10. Plaintiffs allege that on or about November 16, 2011, a BOA representative told them they were approved and to start making trial payments of $972.00. *Id.* at 13. These payments were held in an unapplied account. *Id.* Plaintiffs made three payments of $972 in 2011. *Id.* at 14.[1] Plaintiffs allege that

---

[1] In her deposition, Ms. Quintosa states she made either six or eight $972 trial payments. Dkt. 147-3 at 36 & 44.

on or about December 6, 2011, a BOA loan representative advised them to refrain from making regular payments and that being "past due" on their mortgage was a prerequisite for HAMP modification eligibility.[2] Dkt. 17 at 11.

Plaintiffs allege that on or about March 7, 2012 they were falsely informed by a BOA representative that their documents were not current. Dkt. 17 at 12. Plaintiffs, relying on that representation, sent their application and supporting documentation more than three times. *Id.*

The Plaintiffs moved out of their home in 2012 and the home was foreclosed on by BOA on December 28, 2012. *Id.* at 14. The foreclosure judgment was $62,951.51 more than Plaintiffs' original mortgage. *Id.* Plaintiffs allege that, despite living in the home until August 2011, BOA charged them for thirty-four property inspections from 2010 to 2012. *Id.*

Plaintiffs allege that BOA committed common law fraud against them when it requested they make trial payments during the HAMP application process but "omitted the fact that it had no intention of approving the application and intended to apply some of the funds sent by Plaintiffs for trial payments to fraudulent inspection fees." Dkt. 17 at 15. Plaintiffs allege BOA misled them to believe the payments would be applied to their mortgage. *Id.* Plaintiffs allege BOA

---

[2] The timeline of events is not entirely clear. Ms. Quintosa testified at her deposition to a speaking to a BOA representative for the first time in 2009 but the Complaint alleges this occurred in 2011. *Compare* Dkt. 17, *with* Dkt. 147-3.

fraudulently concealed the facts giving rise to this claim. Dkt. 17 at 16. Plaintiffs cite to fraudulent and inequitable conduct by those carrying out HAMP processing.

On June 17, 2014, Lixis Quintosa filed for bankruptcy. *In re: Lixis Quintosa Mendez*, Case No. 8:14-bk-07021-KRM.[3]  Manuel Blanco was listed as a co-debtor for the deficiency on the mortgage owed to BOA but was not a joint debtor on the bankruptcy petition. Bankr. Doc. 1 at 1, 15, 21. Lixis Quintosa was granted a discharge under section 727 of title 11, United States Code, on October 15, 2014. Bankr. Doc. 14.

## LEGAL STANDARD

Under Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact.

---

[3] Citations to documents on the bankruptcy docket will be labeled as "Bankr. Doc. __".

4

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If met, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted). To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party and must resolve any reasonable doubts in the non-moving party's favor. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita*, 475 U.S. at 587.

## DISCUSSION

BOA raises several grounds for summary judgment. BOA argues first that Ms. Quintosa's fraud claim belongs to the bankruptcy trustee, so she lacks standing to sue. Second, the claim is barred by Florida's four-year statute of limitation for

fraud claims. Third, the claim is barred by the doctrine of res judicata. Fourth, Plaintiffs could not have reasonably relied on BOA's statements because they had equal access to the underlying information. Finally, Plaintiffs cannot raise this claim because they failed to notify BOA as required by the mortgage agreement. The Court will address each of these claims in turn.

1) Bankruptcy

As an initial matter the Court must determine the effect of Ms. Quintosa's bankruptcy on her ability to bring this claim.[4] BOA argues that Ms. Quintosa lacks standing to bring this claim because of her 2014 bankruptcy and instead it belongs to the bankruptcy trustee. Whether the claim belongs to the trustee is determined by when the claim accrues: if it accrues on or before the commencement of the bankruptcy case, it is part of the bankruptcy estate. *In re Bracewell*, 454 F.3d 1234, 1237 (11th Cir. 2006) ("[T]he property of the debtor's estate is property the debtor had when the bankruptcy case commences, not property he acquires thereafter."); *see also Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1042–43 (11th Cir. 2004). "[T]he question of whether a debtor's interest in property is property of the estate is a federal question, but the definition of property and issues about the nature and existence of the debtor's interest, are issues of state law." *Bracewell*, 454 F.3d at

---

[4] Mr. Blanco was not a joint filer in the bankruptcy, so the bankruptcy analysis does not apply to him. Bankr. Doc. 1 at 1, 15, 21; Dkts. 165 at 1 & 162 at 1.

1243. Looking to Florida law, a claim accrues when the last element constituting her cause of action occurred. *In re Alvarez*, 224 F.3d 1273, 1277 n.7 (11th Cir. 2000); *see* Fla. Stat. § 95.031(1) ("A cause of action accrues when the last element constituting the cause of action occurs."). So if the last element constituting the cause of action occurred pre-bankruptcy then it belongs to the bankruptcy trustee, regardless of whether the Ms. Quintosa listed it on her bankruptcy petition.

Under Florida law "there are four elements of fraudulent misrepresentation: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (quoting *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985)). All four of these elements occurred before June 2014 when Ms. Quintosa filed for bankruptcy. For the purpose of determining the timing of events, the Court will assume the statements made by the BOA representative about needing to be in default and that they qualified and should make trial payments were material and false, that BOA knew the statements were false, and it intended for Ms. Quintosa to act on the statements. According to the Plaintiffs these statements happened in late 2011 and early 2012. This is well before Ms. Quintosa filed for bankruptcy. The final element, the consequent injury, had also already occurred. The home was foreclosed on and sold by BOA, she

incurred the allegedly fraudulent inspection fees, and made the allegedly misapplied trial payments, all before she filed her bankruptcy petition.

The question raised in Ms. Quintosa's case is whether her lack of knowledge—that she knew or should have known—about the claim prevents the cause of action from accruing for the purpose of the claim being pre- or post-petition in the bankruptcy. It is clear under Florida law that claims for fraud do not start accruing for statute of limitation purposes until the plaintiff knew or should have known about the facts giving rise to the cause of action. Fla. Stat. § 95.031(2)(a); *see* discussion *infra*.

But the issue of when a claim accrues for bankruptcy is different than for the statute of limitations. The Eleventh Circuit, in a footnote, adopted the Fifth Circuit's reasoning in *Swift* that: "a cause of action can accrue for ownership purposes in a bankruptcy proceeding before the statute of limitations begins to run." *In re Alvarez*, 224 F.3d 1273, 1277 n.7 (11th Cir. 2000); *see Matter of Swift*, 129 F.3d 792, 798 (5th Cir. 1997); *see also Tyler v. DH Capital Mgmt., Inc.*, 736 F.3d 455, 462–63 (6th Cir. 2013); *Cusano v. Klein*, 264 F.3d 936, 947 (9th Cir. 2001). This distinction is due to the purpose of accrual of a cause of action in bankruptcy differing from the purpose of the statute of limitations. *Swift*, 129 F.3d at 796. Accrual is tied to the fundamental purpose of making an injured party whole while the statute of limitation bars stale claims. *Id.* The Eleventh Circuit

established that the inquiry in bankruptcy proceedings is whether the claim had

"'accrued' in the sense of Fla. Stat. Ann. § 95.031(1), *i.e.* when the last element

constituting his cause of action occurred." *Alvarez*, 224 F.3d at 1277 n.7. In doing

so the court distinguished between accruing for bankruptcy under Fla. Stat. §

95.031 and the tolling of the statute of limitations under Fla. Stat. § 95.11(4) for

legal malpractice claims. *Id.*

But this case presents a more complex problem. The difference here is the

discovery requirement for fraud claims under Florida law is part of, and an

immediate exception to, Fla. Stat. § 95.031. Florida statute § 95.031 states:

> Except as provided in subsection (2) and in s. 95.051 and elsewhere in these statutes, the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues.
>
> (1) A cause of action accrues when the last element constituting the cause of action occurs. . . .
>
> (2)(a) An action founded upon fraud under s. 95.11(3), including constructive fraud, must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere in s. 95.11(3), but in any event an action for fraud under s. 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered.

The cases in the Eleventh Circuit and elsewhere which have dealt with this issue

did not involve claims of fraud. Thus, the issue remains whether a claim for fraud

under Florida law does not accrue for any purpose until after the plaintiff

discovered or should have discovered with the exercise of due diligence the facts giving rise to the cause of action.

The Court acknowledges the case law on this matter is muddled. The Florida Supreme Court recognized there is a distinction between statutory tolling and whether a cause of action has accrued. *Hearndon v. Graham*, 767 So. 2d 1179, 1184–85 (Fla. 2000) ("The determination of whether a cause of action is time-barred may involve the separate and distinct issues of when the action accrued and whether the limitation period was tolled. . . . [T]hat while accrual pertains to the existence of a cause of action which then triggers the running of a statute of limitations, tolling focuses directly on limitation periods and interrupting the running thereof."). In *Hearndon*, the Florida Supreme Court applied the delayed discovery doctrine to the accrual of a cause of action arising out of childhood sexual abuse that occurred prior to the delayed discovery doctrine being enacted by the legislature in 1992. *Id.* at 1184–86; *see Davis v. Monahan*, 832 So. 2d 708, 710 (Fla. 2002).

However, the term accrual is often, almost exclusively, used in the context of determining whether the statute of limitations has run. *Swift*, 129 F.3d at 796. The Florida case law since *Hearndon* reviewed by the Court solely dealt with the term accrual in the context of the statute of limitations and whether a party is barred from bringing a claim. *Davis*, 832 So. 2d at 710.

For example, the discussion about delayed discovery in *Davis v. Monahan* has been used to support the proposition that accrual is delayed and that the running of the statute of limitations is delayed. 832 So. 2d 708, 709–10 (Fla. 2002); *compare Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1320 (M.D. Fla. 2013), *with Bedtow Grp. II, LLC v. Ungerleider*, 684 F. App'x 839, 841 (11th Cir. 2017). Thus, even when courts referenced the delayed discovery doctrine delaying the accrual of a fraud claim instead of it tolling a fraud claim, it is not clear this meant the claim had not accrued for ownership purposes in bankruptcy.

Thus, the Court is left to rely on the text of the statute and the general trend of recognizing a difference between whether a claim accrued for bankruptcy and whether it accrued for the statute of limitations. Every case reviewed by the Court acknowledged the difference between whether a claim accrued for the purpose of bankruptcy and whether it accrued for the purpose of the statute of limitations; and that even when cases refer to accrual it does not necessarily include accrual for bankruptcy. This creates a strong presumption that accrual, for the purpose of bankruptcy, occurs when all the elements of a cause of action have occurred, regardless of if the delayed discovery doctrine applies for the statute of limitations. This interpretation is supported by the sole fraud case the Court found, *Putzier v. Ace Hardware Corp.*, 50 F. Supp. 3d 964 (N.D. Ill. 2014). In *Putzier*, the court

held that "[a] plaintiff's discovery of his cause of action, while potentially relevant to a statute of limitations analysis, does not affect the accrual of his claim for determining the nature of the bankruptcy estate." *Id.* Plaintiffs did not identify any cases where a court held that lack of discovery was sufficient to delay accrual for bankruptcy and the Court found none.

This reading is also supported by the statutory language. Florida statute § 95.031 states: "Except as provided in subsection (2) [Fraud claims] . . . the time within which an action shall be begun under any *statute of limitations* runs from the time the cause of action accrues." (emphasis added). Additionally, subsection (2) uses "period running" to describe the allowable delay. Fla. Stat. § 95.031(2)(a). This language is the type typically used in the statute of limitations context. Thus, the conclusion that the delayed discovery doctrine does not apply for the purpose of vesting a claim in bankruptcy is based squarely in statutory language.

While an argument could be made that the Florida legislature intended to imply a different meaning for accrual of a fraud claim from other discovery tolling actions by placing the exception in § 95.031 instead of § 95.11, that argument was not made to the Court. The consensus in the case law provided by the Parties and in the Court's own research is that accrual for purposes of a claim belonging to the bankruptcy estate is separate from tolling for the statute of limitations. So the fact that Ms. Quintosa was unaware of the fraud claim, does not prevent it from having

accrued before the bankruptcy. Because all elements of the claim accrued prior to Ms. Quintosa filing her bankruptcy petition, her fraud claim is pre-petition and she lacks standing to bring this suit. Accordingly, summary judgment is granted for BOA against Ms. Quintosa.

2) <u>Statute of Limitations</u>

Next, BOA argues that Mr. Blanco's claim is barred under the statute of limitations. Dkt. 145 at 9. Under Florida law, there is a four-year statute of limitations for fraud. Fla. Stat. § 95.11(3). Traditionally, a cause of action accrues "when the last element constituting the cause of action occurs." *Id.* § 95.031(1). "However, actions sounding in fraud do not accrue until 'the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence.'" *Simony v. Fifth Third Mortg. Co.*, No. 2:14-CV-387-FTM-29DNF, 2014 WL 5420796, at *2 (M.D. Fla. Oct. 22, 2014) (quoting Fla. Stat. § 95.031(2)(a)). "Accordingly, fraud causes of action are barred four years after the plaintiff knew or should have known that the fraud occurred." *Id.* This raises the questions when Mr. Blanco knew or should have known the fraud occurred.[5]

---

[5] BOA's citation to *McLean v. GMAC Mortg. Corp.* is unpersuasive. No. 06-22795-CIV, 2008 WL 1956285, at *20 (S.D. Fla. May 2, 2008). Dkt. 153 at 7. Contrary to BOA's contention in its reply, the majority of the fraud claims in *McLean* were dismissed for reasons other than statute of limitations. The two sub-claims that were dismissed because of the statute of limitations related to events where the plaintiffs had actual knowledge of the fraud prior to the four-year limit, including where they filed a motion to vacate the foreclosure action based on the fraud. There is no claim of actual knowledge here.

In his deposition Mr. Blanco testified that he never dealt with BOA directly, instead his wife, Ms. Quintosa, handled the mail and the phone calls. Dkt. 147-16 at 11–12. However, he testified that he would discuss the issues with her. *Id.* at 14 & 17. The only indication on the record of when Mr. Blanco knew about the fraud is his testimony—when asked by his own attorney at the deposition—that he was unaware of a potential fraud claim until he hired his current attorney. *Id.* at 18–19. No evidence in the record indicates Mr. Blanco should have been aware of the fraud sooner.[6] Unlike other fraud cases, there were no later dealings between the Parties that would have alerted Mr. Blanco to BOA's alleged fraud. *See, e.g.*, *Altenel, Inc. v. Millennium Partners, L.L.C.*, 947 F. Supp. 2d 1357, 1371 (S.D. Fla. 2013). Here, Plaintiffs continued to rely on BOA's statements about their eligibility for HAMP and that they were missing documents in their HAMP application. Drawing all factual inferences in favor of the non-moving party, this

---

[6] BOA points to Ms. Quintosa's testimony to attempt to establish that the Plaintiffs were aware of the fraud as early as 2009 or 2010. Dkt. 153 at 5. The Court carefully reviewed Ms. Quintosa's deposition and finds what Ms. Quintosa is referring to is unclear. Dkt. 147-3 at 48–50. First, BOA's counsel asks about her prior reference to news stories, but Ms. Quintosa had not previously testified about hearing or watching news stories about BOA. Then she twice repeats that she does not remember, before BOA's counsel supplies the years 2009 and 2010. The discussion before this question could indicate her response was about either why she filed a HAMP claim with BOA or the current case. However, viewing the evidence in the light most favorable to the non-moving party, it seems questionable that she saw news stories about the fraud before applying for HAMP and having discussions with BOA representatives in 2011. So the Court will not rely on this statement alone to grant summary judgment.

means when the Plaintiffs filed their complaint in 2017, they were within the four-year limitation period for filing.

"Furthermore, the question of when fraud is discovered is a question for the jury." *Bearse v. Main St. Invs.*, 220 F. Supp. 2d 1338, 1345 (M.D. Fla. 2002). Plaintiffs allege they did not discover the fraud until 2016 which is within the four-year statute of limitation for fraud. Thus, any issue about the discovery of fraud before that point must go to the factfinder.

But to the extent that Plaintiffs allege BOA charged them improper inspection fees prior to any alleged false statements regarding HAMP, those claims are barred by the statute of limitations. *See Brexendorf v. Bank of Am., N.A.*, 319 F. Supp. 3d 1257, 1263 (M.D. Fla. 2018).[7]

3) Res Judicata

Next, BOA argues that Plaintiffs' claim is barred by res judicata. Dkt. 145 at 14. BOA argues that Plaintiffs could have raised their current fraud claim as a defense to the foreclosure and thus they are barred from raising it now. Plaintiffs argue that res judicata does not bar their claim because the fraud was unknown and could not reasonably be known at the time of the foreclosure. Dkt. 152 at 10.

---

[7] To the extent the Plaintiffs may have argued that they were part of the *George* class (*George v. Urban Settlement Services*, 1:13-cv-01819-PAB-KLM (D. Colo)) and that the case should be tolled under *American Pipe & Constr. Co.*, 414 U.S. 538 (1974), they raised no such argument in their response to BOA's motion for summary judgment, despite BOA specifically arguing why the Plaintiffs are not members of the *George* class and that *American Pipe* does not provide tolling. As Plaintiffs failed to raise the argument, the Court will not consider it.

"In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court applies the rendering state's law of preclusion." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011) (citations omitted). "Under Florida law, res judicata applies where there is: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; (4) identity of the quality [or capacity] of the persons for or against whom the claim is made; and (5) the original claim was disposed on the merits." *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1074 (11th Cir. 2013) (internal quotation marks and footnote omitted). "For res judicata or collateral estoppel to apply, there must also exist in the prior litigation a 'clear-cut former adjudication' on the merits." *Id.* (citation omitted).

"Moreover, the failure to bring a compulsory counterclaim in a state court proceeding bars a subsequent suit in federal court on that claim." *Beepot v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1370 (M.D. Fla. 2014), *aff'd*, 626 F. App'x 935 (11th Cir. 2015) (internal quotation omitted). The Florida Supreme Court has adopted the following test to determine whether a counterclaim can be deemed compulsory:

> [A] claim has a logical relationship to the original claim if it *arises* out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the

> original claim rests activates additional legal rights in a party defendant
> that would otherwise remain dormant.

*Londono v. Turkey Creek, Inc.*, 609 So. 2d 14, 20 (Fla. 1992) (quoting *Neil v. S.*

*Fla. Auto Painters, Inc.*, 397 So. 2d 1160, 1164 (Fla. 3d DCA 1981)).

Following the reasoning in the Florida Supreme Court's answer to the

Eleventh Circuit's certified question in *Aguilar v. Se. Bank, N.A.*, 728 So. 2d 744,

746 (Fla. 1999), the Court finds that Plaintiffs' fraud claim does not meet the

logical relationship test articulated in *Londono* and is not a compulsory

counterclaim required to be filed in the foreclosure suit. The foreclosure action

focused on the original mortgage agreement between the Parties and Plaintiffs'

default under its terms. The present action asserts that BOA made false statements

to induce Plaintiffs to act outside the terms of the original mortgage agreement.

Thus, Plaintiffs' claim in this action involves separate questions of law and fact

from those at issue in the foreclosure. *See, e.g.*, *Sandaler v. Wells Fargo Bank,*

*N.A.*, No. 6:16-CV-1919-ORL-41GJK, 2017 WL 5443149, at *5 (M.D. Fla. Nov.

14, 2017) ("[W]hile the foreclosure action was based on the mortgage and note

Plaintiff executed, the instant action is based on Plaintiff's loan modification

applications, related documents, and his communications and correspondence—or

lack thereof—with Defendant."); *Traver v. Wells Fargo Bank, N.A.*, No. 3:14-CV-

895-J-32MCR, 2015 WL 9474612, at *5 (M.D. Fla. Dec. 29, 2015); *Bowen v.*

*Wells Fargo Bank, N.A.*, No. 2:11-CV-91-FTM-29SPC, 2011 WL 3627320, at *4

17

(M.D. Fla. Aug. 17, 2011) ("This federal case, however, does not advance the same causes of action as in the state case. The issues in this federal case stem from the foreclosure, in that plaintiff asserts that Wells Fargo's actions and misrepresentations led to the foreclosure, but the claims are separate from the foreclosure. . . . In this case, plaintiff's claims arise from the alleged oral agreement and not from the foreclosure proceeding itself. The Court finds that plaintiff's claims do not pass the *Londono* test, and therefore the claims were not compulsory and are not deemed waived."). *But see Salazar v. Bank of Am., N.A.*, No. 8:17-CV-2535-T-23AEP, 2018 WL 3548753, at *4 n.9 (M.D. Fla. July 24, 2018).

Further, the Eleventh Circuit has held that "res judicata does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1357 (11th Cir. 1998). Plaintiffs were served with the foreclosure lawsuit on June 29, 2011. Dkt. 145 at 10. It is not clear in the record that Plaintiffs' fraud claim regarding the HAMP modification existed when the foreclosure was filed. This matter is further complicated because a fraud claim under Florida law does not begin to run until "the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence[.]" Fla. Stat. § 95.031(2)(a). So if Plaintiffs did not discover or could not have reasonably discovered the facts giving

rise to their claim, then it was not yet in existence and Plaintiffs were not obligated to supplement their pleadings in the underlying foreclosure.[8]

Finally, there is no private right of action against loan servicers under the statutory and regulatory scheme which set up HAMP. *Nivia v. Nation Star Mortg., LLC*, 620 F. App'x 822, 825 (11th Cir. 2015) (citing *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012) (per curiam)). BOA's decision, rightfully or wrongfully, to decline Plaintiffs' HAMP loan modification does not create a claim here or a defense in the foreclosure action. BOA has repeatedly argued that Plaintiffs' default on their home occurred irrespective of BOA statements and that Plaintiffs were financially unable to save their home from default and the resulting foreclosure. The record supports this as Plaintiffs testified that they were unable to continue making payments after falling into default. Dkt. 147-3 at 23.[9] As HAMP itself created no express private right of action, Plaintiffs could not have raised it as a defense in the foreclosure.

---

[8] *See Madura v. Countrywide Home Loans, Inc.*, No. 8:06-CV-2073-T-24TBM, 2008 WL 2856813, at *18 n.46 (M.D. Fla. July 22, 2008), *aff'd*, 344 F. App'x 509 (11th Cir. 2009). The Court acknowledges the tension between accrual defined here and accrual defined for bankruptcy *supra*. However, the Court finds the narrow reading of accrual used in bankruptcy does not apply here; instead the policy behind delayed discovery favors applying accrual in the same manner as it is applied for the statute of limitations. The narrower reading used in bankruptcy does not eliminate the claim, it merely passes standing to the trustee.

[9] Plaintiffs are unable to make a contested issue of material fact on this matter by attaching Lixis Quintosa's post-deposition declaration to their response to the motion for summary judgment. Dkt. 152 at 17. In the declaration Ms. Quintosa states: "Even though I fully intended to get my Bank of America, NA loan to current status, and communicated such intentions, I followed and relied upon the directions provided to me by Bank of America NA loan representatives and stayed in default status in order to qualify for a HAMP Loan Modification." *Id.* But this

Here, Plaintiffs are not challenging the validity of the mortgage or making a claim for fraud in the inducement, which would be barred by res judicata as defenses that could have been brought in the foreclosure action. *See Norris v. Paps*, 615 So. 2d 735, 737 (Fla. 4th DCA 1993) ("At least in some, if not all, cases, fraud in the inducement of a note or mortgage is a compulsory counterclaim to an action in foreclosure on the note or mortgage."). Instead, Plaintiffs are making a separate claim for fraud based on false statements which induced them to make additional payments and incur additional expenses. This portion of the fraud claim was not required to be litigated during the foreclosure, as it was not a defense to the foreclosure.

Accordingly, the Court finds that Plaintiffs' claim is not barred by res judicata to the extent it does not attack the foreclosure judgment. Plaintiffs may not raise any claim relating to the original mortgage or to the loss of their home in the foreclosure action. But Plaintiffs may bring the fraud claim as it relates to separate and distinct injuries cause by BOA's allegedly false statements and practices regarding HAMP.

---

statement, without more, is insufficient to support that Plaintiffs were financially able to save their home; instead, it merely indicates that they wanted to save their home. *See United States v. Stein*, 769 F. App'x 828, 832 (11th Cir. 2019) (citing *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949) ("Belief, no matter how sincere, is not equivalent to knowledge.")).

4)  <u>Reasonable Reliance</u>

BOA argues that Plaintiffs are barred from bring this fraud claim on its statements regarding the HAMP program and HAMP qualifications because the Plaintiffs had access to the same information as BOA. BOA points to *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064 (S.D. Fla. 2009), to support its claim that Plaintiffs cannot sustain a fraud claim when the information was just as accessible to them as it was to the defendant. Dkt. 145 at 8. However, this case is factually distinguishable from *Greenberg*. *Greenberg* dealt with fraudulent concealment of an intent to patent a scientific discovery. In *Greenberg*, the plaintiffs were active participants in the medical research for which the defendant received a patent; they provided funding and tissue donations for several years. This level of involvement in the process differs from the Plaintiffs here merely providing documents to BOA for its approval.

Further, the concealment of a patent is distinguishable from concealment alleged here. A patent being issued is publicly available information published by a government entity, but the Plaintiffs' HAMP application status and processing was only known to BOA. While the requirements for HAMP were publicly available it was reasonable for the Plaintiffs to rely on statements made to them by BOA about the status of their HAMP application which was being processed by BOA. Unlike with a patent, there is no independent third party reviewing the Plaintiffs' HAMP

application that the Plaintiffs could have checked. Here, Plaintiffs must rely on BOA to determine the status of their application.

The court in *Greenberg* also made a point of saying the plaintiffs could have discovered the defendants' intent to obtain a patent by "a simple phone inquiry to the Defendants[.]" *Greenberg*, 264 F. Supp. 2d at 1074. However, the Plaintiffs here tried repeatedly to call BOA and obtain information and they allege BOA knowingly made false statements about their application in response to these calls. This is not a case in which there is only an allegation of a failure to disclose information otherwise available. Here Plaintiffs have alleged BOA made statements it *knew to be false* combined with selective omissions to cause Plaintiffs to act. This step beyond simple nondisclosure allows Plaintiff to continue to trial.

5) <u>Contract Provisions</u>

Finally, BOA argues that Plaintiffs' claim is foreclosed because of their failure to satisfy the contractual conditions precedent in the mortgage agreement. Dkt. 145 at 17–19. BOA argues that Plaintiffs' cause of action arises out of the mortgage and, as such, Plaintiffs were required to notify BOA of the alleged breach and give BOA a reasonable period of time to take corrective action prior to filing suit. Since Plaintiffs provided no notice to BOA before filing suit, BOA argues the claim is barred. Plaintiffs argue that they are not suing for breach of

contract under the mortgage, so the condition precedent does not apply. Dkt. 152 at 12–14.

To the extent Plaintiffs are claiming omissions of statements that were available to them in their loan documents implicating the mortgage, they are barred from raising the claim because of their failure to satisfy the condition precedent. *Dykes v. Bank of Am., N.A.*, No. 17-CV-62412-WPD, 2018 WL 7822282, at *3 (S.D. Fla. July 10, 2018). But to the extent that Plaintiffs' claim depends on false statements of fact regarding their HAMP application or their approval and subsequent trial payments, these claims do not implicate the notice and cure provision of the mortgage. *Brexendorf v. Bank of Am., N.A.*, 319 F. Supp. 3d 1257, 1265 n.3 (M.D. Fla. 2018) ("The remaining conduct giving rise to the Fraud Claim—that is, the HAMP Eligibility Misrepresentation, Supporting Documents Misrepresentation, Trial Payments Omission, and Inspection Fee Omissions—do not implicate the mortgage."); *Dykes*, 2018 WL 7822282, at *3 ("Plaintiff's claim is premised on the allegations that Defendant's employees made multiple false statements of fact to Plaintiff, including that Defendant had not received her HAMP application, even though she repeatedly submitted it, and that she was falsely informed that she was approved for a trial payment period. These allegations do not arise from the mortgage, nor do they allege any breach of

provisions of or duty owed by reason of the mortgage agreement.").[10]  Thus, Plaintiff's claim may continue to trial.

<strong>CONCLUSION</strong>

For the reasons stated above the Court grants in part and denies in part Defendant's Motion for Summary Judgment. Dkt. 145. The Court finds there remain issues of material fact that prevent summary judgment regarding the alleged fraudulent statements by BOA regarding Plaintiffs' HAMP application status and the resulting damages. Summary judgment is granted to Defendant against Ms. Quintosa and for any damages incurred before the first allegedly false statement. Finally, Mr. Blanco is barred by res judicata from using this claim to attack the validity of the foreclosure judgment but may continue with this claim as a separate and distinct action for fraud.

**DONE AND ORDERED** at Tampa, Florida, on August 19, 2020.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

---

[10] BOA's arguments regarding breach of contract are denied on the same basis.

24